Catherine Jo **HOWARD** as Administratrix of the Estate of Ronald E. Howard, Deceased, and Catherine Jo Howard, Individually, Appellant (Plaintiff Below),

v.

**H.J. RICKS CONSTRUCTION COMPANY, INC., Appellee (Defendant Below).**

No. 55A04–8608–CV–261.

Court of Appeals of Indiana, Fourth District.

June 18, 1987.
Rehearing Denied July 20, 1987.

Howard S. Young, Jr., Young & Young, Indianapolis, Robert E. Lybrook, McNutt, Hurt & Blue, Martinsville, for appellant.

Michael V. Gooch, Edward R. Hannon, Indianapolis, for appellee.

CONOVER, Presiding Judge.

Plaintiff-Appellant Catherine Jo Howard (Catherine), individually, and as administratrix of the estate of Ronald E. Howard (Ronald), appeals the trial court's grant of summary judgment favoring Defendant-Appellee H.J. Ricks Construction Company, Inc. d/b/a Northgate Shopping Center, in an action for damages pursuant to the Wrongful Death Statute.[1]

We affirm.

1. IND. CODE 34–1–1–2.

ISSUES

Catherine raises one issue for our review. Restated, the issue is:

1. whether the trial court erred by finding the Shopping Center's warning of a latent danger to the independent contractor's supervisor was, as a matter of law, sufficient to discharge its duty to warn an employee of the independent contractor of the same danger.

We raise two additional issues *sua sponte*, namely,

2. whether the Shopping Center owed any duty to Ronald as to the high tension lines, and

3. whether Ronald was contributorily negligent as a matter of law.

We do so because we will sustain the trial court's judgment on any legal theory or basis consistent with the facts disclosed by the record.[2]

FACTS

H.J. Ricks Construction Company, Inc. is the owner of Northgate Shopping Center (Shopping Center), located north of Greenfield, Indiana. Howard Ricks (Ricks) is its president. In November of 1983, Ricks contracted with Blackmore & Buckner Roofing, Inc. to repair the roof on a theater building located in the Shopping Center complex. Before executing the contract, Ricks and Bill Moore (Moore), Blackmore and Buckner's roofing crew supervisor, examined the roof. While doing so, Ricks pointed out to Moore the bare, low-hanging electric supply lines running from Greenfield Power and Light's electric transmission lines in the street right-of-way along the east end of the theater building. Because of these lines, Ricks and Moore made specific arrangements to have Blackmore and Buckner's employees gain access to the theater roof on the north end of the building from a bank drive-through lane to avoid those low-hanging wires. They made arrangements to have the work done on a Wednesday, when the bank would be closed.

2. *Thompson v. Public Service Co. of Indiana* (1986), Ind.App., 499 N.E.2d 788, 790, *reh. denied.*

Moore intended to meet with his crew before work on Wednesday to advise them of the warning, and to tell them to set up on the side of the building away from the wires. Unfortunately, on the Wednesday the project was to begin, Moore arrived late for work but Moore's crew arrived on time. One of them, Ronald, placed an aluminum extension ladder on the east end of the building just beneath the high tension electrical supply lines, contrary to the plan Moore and Ricks previously had agreed upon and arranged. Ronald then climbed the ladder to the roof. When he got to the top, his head touched one of the low-hanging high tension lines. It carried 7,200 volts of electricity. Ronald was severely shocked and died as a result.

Catherine filed this cause of action against the Shopping Center, alleging its negligence proximately caused Ronald's wrongful death. The Shopping Center's motion for summary judgment was sustained by the trial court.

Catherine appeals.

DISCUSSION AND DECISION

### I. *Summary Judgment*

■ Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Creighton v. Caylor-Nickel Hospital, Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1305–1306, *trans. denied.* The burden is on the moving party in a summary judgment motion to establish the lack of any genuine issue of material fact. *Ancich v. Mobil Oil Corp.* (1981), Ind.App., 422 N.E.2d 1320, 1322, *reh. denied.*

■ When reviewing the grant of a motion for summary judgment, we stand in the shoes of the trial court. *Lafary v. Lafary* (1985), Ind.App., 476 N.E.2d 155, 158. Therefore, we consider the same matters as it does. *Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154, 163.

Of importance here: we are not precluded from affirming a summary judgment where the final result is correct, although it may have been rendered upon a different theory than that upon which we sustain it. *Celina Mutual Ins. Co. v. Forister* (1982), Ind.App., 438 N.E.2d 1007, 1012. Restated, summary judgment will be affirmed if sustainable on any theory or basis found in the record. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 56; *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157, *reh. denied.*

### II. *Premises Liability*

The parties below and the trial court treated the high tension lines hanging in close proximity to the top of the theater's east wall as a latent defect in the premises. The trial court cited our holding in *Louisville Cement Co. v. Mumaw* (1983), Ind.App., 448 N.E.2d 1219, *trans. denied,* as authority for its entry of summary judgment in favor of the Shopping Center because Ricks had pointed out that condition to Moore, Blackmore and Buckner's roofing crew supervisor, during their inspection tour of the roof.

There are two differences in ultimate fact between this case and *Louisville Cement.* In the latter (a) we assumed the fuel oil inside the supply line was a hidden or latent defect, and (b) that line had been owned and controlled by the company prior to commencement of the cement plant's dismantling. In this case, however, the low-hanging high tension lines and their close proximity to the theater building's east wall (a) were clearly visible, thus patent, and (b) were maintained by the City of Greenfield and Greenfield Power and Light (R. 13–14), not the Shopping Center. Thus, *Louisville Cement* is inappropriate authority for entry of the summary judgment below. Different legal principles apply here.

■ In a negligence action, the burden of proving negligence is upon the plaintiff. *Plan-Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1218; *Hi-Speed Auto Wash, Inc. v. Simeri* (1976), 169 Ind.App. 116, 346 N.E.2d 607, 608. In order to prevail upon an allegation of negligence, the

plaintiff's evidence must be sufficient to demonstrate the existence of all the requisite elements of a cause of action. *Koroniotis v. LaPorte Transit, Inc.* (1979), Ind. App., 397 N.E.2d 656, 659. Specifically, the plaintiff must establish (1) the existence of a duty owing from the defendant to the plaintiff, (2) the defendant's failure to conform its conduct to the requisite standard of care required by the relationship, and (3) injury to the plaintiff proximately resulting from such failure. *Ingram v. Hook's Drugs, Inc.* (1985), Ind.App., 476 N.E.2d 881, 883, *trans. denied.* Whether a duty exists is a question of law. *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216, 1217, *trans. denied.* Thus, the first question is whether there was a duty owing from the Shopping Center to Ronald by virtue of the relationship existing between them at the time.

### A. Duty

◼ Generally, a landowner has a common law duty to exercise due care to keep his property in a reasonably safe condition for business invitees, including employees of independent contractors. *Wingett,* 479 N.E.2d at 54; *Plan-Tec, Inc.,* 443 N.E.2d at 1219. However, a landowner has no duty to furnish the employees of an independent contractor a safe place to work in the broad sense that the phrase is applied to an employer. *Hoosier Cardinal Corp. v. Brizius* (1964), 136 Ind.App. 363, 199 N.E.2d 481, 486, *trans. denied.* The landowner in such case merely has an affirmative duty to exercise ordinary care to keep his property in a reasonably safe condition coextensive with the purpose and intent of the implied invitation. *Hoosier Cardinal,* 199 N.E.2d at 485.

Here, Ronald and his co-workers were impliedly invited to come upon the Shopping Center's property for the sole purpose of repairing the theater building's roof. Thus, under the rule in *Hoosier Cardinal,* the Shopping Center owed them the affirmative duty to use ordinary care to maintain that building, its roof and supporting structures in a reasonably safe condition for the performance of such work, and nothing more.

◼ Ronald's death was proximately caused by his contacting the high tension wires as he climbed the aluminum ladder he had placed against the theater building's east wall, not because of any defect in the Shopping Center's theater building, its roof or supporting structures. While obviously the location of high tension lines in close proximity to the theatre building's wall made them dangerous as to persons attempting to scale it to reach the theater's roof, the Shopping Center owed Ronald and his co-workers no duty either to warn of that dangerous condition or to maintain the high tension lines in a reasonably safe condition so as to prevent injury to them as they ascended the wall. Where the instrumentality causing injury is in the control of the independent contractor or some third person other than the landowner, the complainant contractor's employee who is injured must show the landowner assumed control of the dangerous instrumentality or had superior knowledge of the potential dangers involved. Otherwise, the landowner owes no duty to such persons. *Jones v. Indianapolis Power & Light Co.* (1973), 158 Ind.App. 676, 304 N.E.2d 337, 344, *trans. denied; Denneau v. Indiana & Michigan Electric Co.* (1971), 150 Ind.App. 615, 277 N.E.2d 8, 11, *trans. denied.*

The Shopping Center did not maintain or control the high tension lines. Further, they were in plain view on the day in question, and finally, Ricks pointed them out to Moore on the inspection tour. The Shopping Center had no superior knowledge of that condition, and the knowledge it had was shared with Ronald's employer. Thus, the Shopping Center owed no duty to Ronald and his co-workers that morning regarding the power lines. Absent a duty, there can be no breach of a duty, hence, no negligence or liability based upon breach of a duty. *Wilson v. Haimbaugh* (1985), Ind. App., 482 N.E.2d 486, 487.

◼ Also, warning to the superiors in employment of a person is warning to that person, the employment relation permitting a reasonable assumption that such notice will be communicated in the ordinary

course to all employees on the work. *Hunt v. Leclede Gas Co.* (1966), Mo., 406 S.W.2d 33, 38; *accord, Delhi-Taylor Oil Corp. v. Henry* (1967), Tex., 416 S.W.2d 390, 394, *cert. denied* 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 667; *see also, Vest v. National Lead Co.*, (8th Cir.1972) 469 F.2d 256, 257.

In view of this authority, the trial court did not err in granting the Shopping Center's motion for summary judgment.

### III. *Contributory Negligence*

■ Following our review of the record and the exhibits therein, we also find even had a duty existed, Ronald was contributorily negligent as a matter of law, and such negligence proximately caused his death. Contributory negligence is conduct on the part of the plaintiff which falls below the standard of care to which he should conform for his own safety. *Lawson v. Public Service Co. of Indiana* (1986), Ind.App., 493 N.E.2d 815, 818–819, *trans. denied.* It must also be shown the negligent acts of the plaintiff were the proximate cause of his injury and he was actually aware of or should have appreciated the risk involved. *Hundt v. Lacrosse Grain Co.* (1983), Ind., 446 N.E.2d 327, 329, *reh. denied.* Contributory negligence occurs when the plaintiff fails to recognize an obvious risk or danger. *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484, 489, *reh. denied.*

The photographs set forth at the conclusion of this opinion portray the position of Ronald's ladder on the day the accident occurred, and the close proximity of the electric lines to the theater building's east wall. Additionally, the ladder photographs conclusively show the lines were visible on the day Ronald placed the ladder against the building.

Ronald was not a novice roofer. He either knew or should have known by virtue of his age and employment both the nature of electricity and the dangers inherent in coming in contact with high voltage electric lines. Nevertheless, Ronald climbed an aluminum ladder and let his head touch a high tension line carrying 7,200 volts of electricity. The electric lines were clearly visible. If their low-hanging position was in fact a defect, it was a patent defect, one which could have been discovered by such inspection as Ronald would have made in exercise of ordinary care and prudence. *See Wagner v. State* (1978), 86 Cal.App.3d 922, 150 Cal.Rptr. 489, 492.

■ A person is required to make reasonable use of his faculties and senses to discover dangers and conditions to which he is or might be exposed. *Gwaltney Drilling, Inc. v. McKey* (1970), 148 Ind. App. 1, 259 N.E.2d 710, 717. Generally,

it is negligence to fail to see or hear that which you could see or hear, by the exercise of ordinary care, and for that reason the law attaches the same legal consequences for not seeing or hearing as it does if in fact you did see and hear.

*Devine v. Grace Construction & Supply Co.* (1962), 243 Ind. 98, 181 N.E.2d 862, 866, *reh. denied; see also, Kroger v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004, 1011, *trans. denied; Frankfort v. Owens* (1976), 171 Ind.App. 566, 358 N.E.2d 184, 195, *trans. denied.*

■ The voluntary conduct of one exposing himself to dangers which were so obvious, imminent and glaring, that no reasonable man exercising due care for his safety would have hazarded them is negligence as a matter of law. *Moore v. Federal Pacific Electric Co.* (1980), Ind.App., 402 N.E.2d 1291, 1294, *trans. denied; Chicago E.I.R. Co. v. Gallion* (1907), 39 Ind. App. 604, 80 N.E. 547, 549. (If a danger is so great and so near that a prudent man knowing of its existence would not have encountered it, then it constitutes contributory negligence such as will defeat a recovery). *See,* 21 I.L.E. § 85 *Negligence* 342. Given these facts, we find, as a matter of law, Ronald should have appreciated the danger and the likelihood of injury in the situation confronting him that day.

Accordingly, the trial court did not err in granting the Shopping Center's motion for summary judgment on either ground established by the facts in the record.

Judgment affirmed.

YOUNG, J., concurs.

SULLIVAN, J., concurs with opinion.

PHOTO EXHIBIT A

EXHIBIT C

EXHIBIT F

EXHIBIT J

SULLIVAN, Judge, concurring.

I concur in the determination of my colleagues to not apply *Louisville Cement Co. v. Mumaw* (1983) 4th Dist. Ind.App., 448 N.E.2d 1219, insofar as it holds that a duty to exercise reasonable care may be fulfilled by either removing the dangerous condition or by a warning. I do not, however, agree that the case is distinguishable on grounds that the defect here was patent. The parties to this appeal agree and concede that the defect was latent. As a corollary to this proposition, I disagree that the case may be resolved by holding Howard guilty of contributory negligence as a matter of law. By resort to photographs and other matters of evidence concerning the appearance and location of the high tension lines, the majority usurps the function of the trier of fact. It makes a dispositive, ultimate factual conclusion which was not made by the court below and did not constitute a basis of the judgment. By doing so, I believe the correct decision has been compromised and made unduly complicated.

The majority acknowledges that the high tension lines constituted a danger to persons attempting to ascend to the roof. The majority likewise acknowledges that the defendant invited plaintiff to ascend to the roof for the purpose of making repairs. However, the majority absolves defendant of any duty on grounds that it did not have control over the wires and that the danger was apparent. The decision today is premised in part upon the fact that Howard's employer had knowledge of the danger equal to that of defendant. I do not view this as a viable basis for the affirmance.

In my view, the basic issue is not, as posed by the majority, whether warning to the supervisor fulfills a duty to warn the employee if such duty exists. The duty is to exercise reasonable care. That duty may or may not be fulfilled by a warning. In any event, there is no duty to warn independent of the duty to exercise reasonable care. The issue is no more and no less than whether defendant exercised reasonable care.

My concurrence in the affirmance is premised solely upon my conclusion that as

a matter of law, under these circumstances, defendant's warning to Howard's supervisor met the requisite standard of reasonable care.